The court will now call this case 115-102, People of the State of Illinois v. Ronald Patterson. Are the parties ready to proceed? Yes, ma'am. You may proceed. Good morning, Madam Chief Justice, esteemed members of the court. I am Assistant State's Attorney Douglas Harbath on behalf of the people of the State of Illinois. May it please the court. On December 14, 2008, after forcing her off the freeway, the defendant sexually assaulted a 25-year-old counselor from his residential facility. During the prolonged and vicious attack inside the van, the defendant repeatedly sexually assaulted the victim vaginally and orally. The defendant was later arrested at his residential facility in the presence of its director and other staff, and the police attempted to notify the defendant's DCFS caseworker. The defendant was treated well by the police, he was Mirandized, and he manifestly understood the interrogation process and admitted to sexually assaulting the victim. In the absence of any evidence or even an allegation of coercion, inducement, or mistreatment of any kind, the trial court promptly denied the defendant's motion to suppress, finding that his statement was voluntary. The trial court also recognized that the police complied with the Juvenile Court Act, giving actual and immediate notice to the director of the defendant's residential facility. These findings fully comport with the Juvenile Court Act and this court's decisions in Murdoch, Geo, and Morgan. However, the appellate court relied solely on the absence of a concerned adult and the participation of a youth officer to invalidate the confession. In so doing, the appellate court elevated these factors above all others and failed to consider the totality of the circumstances. The appellate court did violence to the bifurcated standard of review by neglecting to address or consider the trial court's factual findings. In short, the appellate court's decision cannot be reconciled with this court's decisions in Murdoch, Geo, and Morgan. The appellate court also misapprehended and curtailed the important protections of Illinois' rape shield statute by declaring that a defendant may elicit evidence of a victim's sexual history based on his own speculation that it might supply an explanation for physical evidence of the sexual assault. But in order to satisfy his heightened evidentiary burden and establish a constitutional necessity for such evidence, the defendant had to do more than hypothesize that the victim's consensual sex with the boyfriend in the days leading up to the sexual attack could possibly have caused cervical inflammation. The trial court recognized that the defendant's theory of admissibility was tenuous and she properly exercised her discretion after balancing the defendant's interest in the evidence and the purpose and the spirit of the rape shield statute. Therefore, this court should reverse the judgment of the appellate court and affirm defendant's convictions and sentences. With regard to the statement, the appellate court's decision simply cannot be reconciled with this court's decisions in Murdoch, Geo, and Morgan. Under the totality of the circumstances, the defendant's confession was voluntary. No threats or promises or any evidence of coercion. He was treated well. He manifestly understood the interrogation process. He could read. He was not handcuffed. He was questioned at a reasonable hour for a short period of time. He never requested the presence of a concerned adult, and a concerned adult was not prevented from conferring with the defendant. Counsel, don't you think that the police officers could have made greater efforts to get in touch with someone at DCFS or the defendant's guardians? And how does that fact weigh into the suppression analysis? Well, the trial court expressly found that the ‑‑ in terms of factual findings, the trial court found that the efforts that the youth officer did undertake were reasonable, and I think that that decision is correct. The statute requires ‑‑ You said it was two minutes between the time they called and they started? There were two minutes between the time the phone call was made to the defendant's caseworker. However, the appellate court overlooked, and I think the trial court correctly recognized, that the defendant's ‑‑ the director of his residential facility was on actual notice of his arrest. His therapist, who actually brought him down from his room, were on actual notice. Those individuals are expressly contemplated by the notice provision of the Juvenile Court Act. That requires a reasonable attempt to notify a person who is legally responsible for the minor's care or the person with whom he resides. There was strict compliance. Based on the language of the statute, the efforts undertaken strictly complied with the statute. To the extent that my opponent suggests other alternative measures or things that the police could have done, I think that would be true in any case. Even though the juvenile investigating officer was investigating and then became the alleged juvenile officer to watch over the best interests of the defendant? Is that permitted as well? Well, I think there was not even an allegation that the youth officer acted inappropriately in terms of not notifying a particular individual over another particular individual. I think what this court said in Murdoch is that regardless of the efforts taken or the reasonableness of the notice notifications, there has to be some actual evidence of involuntariness, some actual evidence of coercion. So to the extent that the appellate court found that it would have taken other measures or it was more reasonable to obtain the caseworker's cell phone or her home phone. Would it help at all to know that this particular defendant had some special needs? Well, I think the police were on. I mean, they certainly knew that he was in residence at a residential facility. They were obviously expressly aware that he was a DCFS ward. And I think that's why they took additional efforts. They did make a phone call. And to the extent that the interrogation started two minutes, as Your Honor pointed out, after the phone call was made, I think it's noteworthy that the caseworker didn't call back for two days. And at that point, the claim would be then, well, the defendant was in custody for far too long before the interrogation commenced. There is a 24-hour requirement that the police have to bring, cannot hold the minor in custody for longer than 24 hours. So the claim could always be, well, that they could wait until Monday. But the question is whether the actions undertaken by the police in a given case actually caused a coercive environment or caused, to use the language of the law. Isn't it kind of against the spirit of the law to just make a phone call and immediately start investigating? I mean, wouldn't be, you know, this wasn't, could wait an hour before they could maybe have somebody call back or try to reach some interested adult for this special needs person. Well, I think it, again, it's important to point out what the appellate court overlooked. And they didn't even recognize that the director of the defendant's residential facility, the person, I mean, expressly and strictly complies with the statute. He was on actual and immediate notice of the defendant's arrest and where he was being detained. Police conduct always turns on reasonableness. And it, with the benefit of hindsight, well, what could the police have done differently under a widely varying set of circumstances? It's always subject to second guessing. Just like an ineffectiveness claim is subject to second guessing. Well, this would have been a better strategy. Well, as the language we use in our briefs is that, well, it can always be argued that they notified the incorrect individual. But the fact remains that there was express and strict compliance with the statute. And Mr. Kehoe was the entity expressly contemplated by the Juvenile Court Act for the purposes of notification. Mr. Harvey, if I want to pick up on something that Justice Burke talked about. She said special needs. And maybe bring into the mix at this point the cross appeal on ineffective assistance of counsel. The best I can tell the appellate court, because they ruled to suppress, they really didn't go into the ineffective assistance of counsel. My specific question is that on that issue that the trial counsel did not bring up what I believe was the 72 IQ  and in light of the fact that the trial judge concluded the defendant was, quote, astute and was somewhat that understood things. If that factor had been brought to the attention of the trial judge, wouldn't that have impacted the whole totality of the circumstances argument? Our position is not that that evidence would have been irrelevant, to be clear. That that evidence would have been irrelevant to the determination of whether or not his statement was voluntary. In response to the defendant's ineffectiveness claim, his attorney made a well-reasoned strategic decision to focus on the circumstances of the interrogation rather than his mental health history. And I think it's important, and I think my opponent overlooks this, that the results of the behavioral clinical examination showed that the defendant was capable of making a voluntary statement. That in spite of his low IQ, as Your Honor points out, in spite of his mental deficiencies, he was able to give a voluntary statement. He was fit, he was sane, he understood, and he demonstrably understood his Miranda warnings. I just want to stop you on the strategy aspect because my specific question is mental capacity of the accused is one of the factors in the totality of the circumstances to be considered. So, I mean, to say that we're talking about totality of the circumstances and one of the factors that the trial judge would have had the opportunity to look at, the 72 IQ and the psychiatric problems, I mean, why shouldn't this court then just remand it for a new hearing with that factor in place? I mean, we could agree with you that the appellate court should be reversed with respect to the suppression based on what was before them, disagree with you on the cross appeal, and why wouldn't we just send it back to have another hearing with that factor in place? And I think it's important to acknowledge that the evidence that is already spread of record and combined with the trial court's findings of her own personal, she actually used the word demeanor. I remarked that the defendant, as he appears before me, is an astute young man, he's wise beyond his years, and she did say that, that's not saying that his mental state is older, but she recognized in that, and this is the same judge that had heard the, had conducted the fitness hearing, she was well aware of this particular defendant. And this court pays particular attention to a trial court's first-hand assessment of a minor's intellectual functioning. This court has recognized that the trial judge is sitting in a uniquely advantageous position to make that assessment. And I think the defense attorney, the defense counsel's decision to attack the voluntariness of the confession on the circumstances of the interrogation rather than his mental health history was, it was eminently reasonable. I mean, he had very unhelpful information from the behavioral clinical examination. In fact, it was defense counsel's primary strategy in the appellate court, and a successful one as well. The appellate court reversed based on the circumstances of the interrogation, and while it initially relied on evidence of his mental health history and role in the state. Why is it an either-or, though? Why wouldn't you throw one of the factors into the mix? You could stress one over the other, but why completely negate one factor? We're not suggesting that that would be inconsistent. We're suggesting that the case law supports, particularly those cases Cooper and Houseworth, Mahaffey and Foster, where they recognize that a defendant's mental health deficiencies do not in and of themselves make a statement involuntary. And in this case, the defense attorney's primary strategy was to attack the circumstances of the interrogation. And because it's an ineffectiveness claim, it turns on prejudice. So the other half of that coin is the defendant was not sufficiently prejudiced. He hasn't established a reasonable probability that he would have succeeded on his suppression motion had he introduced this evidence, because all this evidence that was unhelpful to him would have come out. There's no other evidence of the psychiatric report or another examination refuting the most recent one, which was from Dr. Ned Carney just prior to trial. Turning to the second issue regarding the rape shield claim, the trial court properly excluded evidence of the victim's sexual activity because defendant's theory of admissibility was speculative, it was remote, and it was uncertain. The purpose of Illinois' rape shield statute is to prevent humiliating and embarrassing a sexual assault victim with evidence of her sexual activities that have little or no bearing on whether or not she was sexually attacked. For that reason, such evidence is presumptively inadmissible, unless a defendant shows a constitutional necessity for the evidence. The appellate decision has greatly diminished the protections of that statute. Now, the defendant is allowed to circumvent the rape shield statute on tenuous theories and speculation that a woman's consensual sex with her partner in the days leading up to an attack might have caused an injury rather than the attack itself. To be clear, this evidence is qualitatively different than ordinary evidence. The statute itself expressly requires a heightened evidentiary showing of relevance and probative value. The injury exception to the rape shield statute that has come to be called does not stand for the proposition that any hypothetical alternative source of physical evidence is admissible. Any evidence in any case that's remote or uncertain or speculative is inadmissible. And in this case, defense counsel simply hypothesized that the victim's sex with her boyfriend three days prior to the attack caused the cervical inflammation rather than the attack itself. There was no offer of proof beyond what the testimony would be and that that was that the victim had had sex with her boyfriend in the days leading up to the attack and that his sperm was in cider. There was no connection. There was no offer of proof. There was no substantiation for his claim that that could have caused the redness that lasted for three days. The trial court expressly recognized the remoteness and the tenuous nature of the defendant's request and didn't accept his hypothesis that the consensual sex three days earlier could have caused the redness. In the trial court, this was not a knee-jerk ruling. This was a well-reasoned exercise of discretion. She balanced, she expressly balanced the defendant's need or interest in the evidence with a purpose in the spirit of the rape shield statute, which is to prevent this evidence when it has no bearing on whether or not the victim was sexually attacked. In order to establish that the defendant was denied his Sixth Amendment right of confrontation, it's not enough to show that another appellate court or appellate counsel would have allowed the evidence in. A defendant is not prejudiced in his ability to present his defense just based on a single limitation of cross-examination, and that's what this was in this case. The test is whether the limitation of cross-examination created a substantial danger of prejudice by depriving him of the ability to test the truth of the victim's testimony. In this case, there's no fewer than 80 pages of cross-examination where the defense counsel challenged the victim's veracity or credibility, her ability to recall an alleged inconsistencies in her testimony, and her failure to make an immediate outcry. The defendant was not prevented from asking general questions about consensual versus forced sex. He wasn't prevented from questioning the doctor about cervical redness in general. This doctor had performed thousands of pelvic exams and hundreds of sexual assault exams. He clearly would have had an opinion as to how long cervical redness would be expected to last after consensual sex. And in closing argument, the defendant was fully able to articulate his theory of defense. He was able to argue what he perceived as ambiguity and the source of the redness. So in that sense, he was not prejudiced. He was not denied his Sixth Amendment right of confrontation. For all those, if there are no other questions, for those reasons and for those expressed in the people's briefs, we ask that this court reverse the judgment of the appellate court and affirm defendant's convictions in the sentences. Thank you. Thank you. Thank you. May it please the court, counsel. I'd like to, my name is Christopher Kopecz and I represent the defendant appellee Ronald Patterson. I'd like to stand on my brief with respect to issue three, the juvenile transfer issue, unless this court has any questions on that. And I'd like to focus my argument on the confession and the rape shield issue. With respect to the confession, the trial court erroneously failed to grant the motion to suppress, and the appellate court properly reversed that decision. Here, a critical factor is that the officer's effort to find a concerned adult amounted to no effort at all. The officers made an effort that was guaranteed to fail, that was guaranteed to ensure that no one who cared about Ronald was able to confer with him before the interrogation, or even knew that he was arrested. The officers relied on a voicemail to a caseworker that they knew would not be received, much less returned, in the two minutes before they began their interrogation. Counsel, how is it that we know that they knew that? You said they made the call and they knew it wouldn't be received. Common sense. Common sense. It was a phone call to an office phone. I'm a big fan of common sense, but it's not in the record, right? It was a phone call to an office phone at 10 o'clock on a Sunday night. I suppose common sense is eminently reasonable to think that it wouldn't be returned. We don't know. Is it in the record if this individual is scheduled to be on duty to be in contact? No. It's not in the record? No, it's not. It's not in the record. And that's sort of the problem here, is that the officers made this phone call without any knowledge of whether she would be able to receive this phone call or return it, and within two minutes began their interrogation. What about a notice to the facility director where this young man is actually housed? Sure. Is there any significance to that, or should there be? The significance to that is virtually none. Mr. Kehoe, the director of the youth facility, was obviously conflicted and antagonistic to Ronald's interests. How do we know that? Because he was someone who was the boss of a staff person who had just alleged that she had been assaulted by one of the residents who was charged in her care. At that point... Is that why it doesn't count? Well, it should have been obvious to the officers that Kehoe could not be a concerned adult for Ronald, that he had his own interests to think about, his own staff person, not to mention the fact that Kehoe wasn't Ronald's legal guardian. DCFS was Ronald's legal guardian. Detective Kaminsky, the youth officer, knew that DCFS was the legal guardian. In fact, when he called DCFS, that seems to indicate that he knew that Kehoe's notice, having notice of Ronald's arrest, wasn't enough. It's important to take a step back and look at what the concerned adult factor is. It's about more than just providing the statutory notice that the juvenile has been arrested. It's about providing someone who would confer with the juvenile before and during the interrogation, someone who would look out for his interests during the interrogation. It should have been obvious to the officers that Kehoe could not serve in that capacity. And so the fact that Kehoe and everyone else who might have been standing around in the facility while Ronald was arrested had notice of that arrest is not sufficient to satisfy the concerned adult factor here. So the fact of the matter is that there were a number of things that the officers could have done. What should the officers have done? The officers could have called the DCFS 24-hour hotline. It's probably the most obvious thing that they could have done to either locate Ronald's caseworker or another caseworker or someone in DCFS who, again, is Ronald's legal guardian, someone in DCFS to come and act in Ronald's interest or at least have the opportunity. How did they know DCFS was involved? Kaminsky knew that DCFS was Ronald's legal guardian, so he testified to that. Okay. So, you know, the youth officer, at a minimum, the youth officer should try to find the concerned adult. And the officer here knew that DCFS was Ronald's legal guardian. Well, the youth officer would know who to call. They would call the guardians office of DCFS, wouldn't they? Right. Yeah. So they would presumably call someone at DCFS to find... There is a guardians office. Yes. So there is a guardians office is another option that they could have done. Yet another option is that Ronald had family in the area. Ronald had just visited family on an overnight visit that day. So it's possible that one of those family members could have served as the concerned adult. The officers here didn't pursue any of those options, left their message, and within two minutes began their interrogation of Ronald. And this sort of gets into the ineffectiveness claim, because the fact is that Ronald was a kid with special needs. He was a kid, a 15-year-old with a 72 IQ who read at a second or third grade level, had a number of mental impairments, bipolar disorders, schizophrenia, who was on psychotropic medication. And that's the kind of situation where a concerned adult is most necessary, where you'd want a concerned adult to act in the child's interest during the interrogation. With respect to the youth officer factor, sometimes the youth officer can act to offset the absence of a concerned adult. Here, Kaminsky was actively investigating the case against Ronald. He interviewed the complaining witness prior to Ronald's interrogation. After the interrogation, it was Kaminsky, the so-called youth officer, who went back, paraphrased Ronald's confession, made a typewritten statement, and got Ronald to sign the confession. So the youth officer here was not acting as an independent youth officer who could somehow offset the absence of a concerned adult. I'd like to also briefly address this Court's recent decision in Murdoch, because that was a 4-3 decision on the question of a juvenile's confession, whether that was voluntary. And it's important to note that even the majority in finding the confession voluntary agreed that the concerned adult factor weighed in the juvenile's favor. And in that case, you had a grandfather who showed up at the station. Here you have even stronger evidence of police foul play or bad faith in beginning their interrogation after leaving a voicemail that they knew would not be returned before they began their interrogation. With respect to the rape shield issue, the State's argument blurs what is really a very clear and straightforward issue. The rape shield statute must yield to evidence that is constitutionally required. And the law in Illinois and across the country uniformly states that under the defendant's constitutional right to presented defense, he can present evidence of a possible or plausible alternative source of the State's physical evidence. And that's exactly what we have here. The State presented evidence of the complainant's cervical injury and argued that this physical evidence was proof that Ronald vaginally penetrated the complainant. Ronald testified that he did not have vaginal intercourse with her. And consistent with that defense, he sought to rebut the State's physical evidence with evidence that the cervical injury could have occurred with sex with the complainant's boyfriend three days earlier. Now, the State complains that the cervical redness The defense didn't show that the cervical redness could last for three days. But what's important here is that defense counsel asked the expert, the State's own expert who had brought in to bring on this evidence, and that expert couldn't tell when the injury had occurred. He couldn't determine how it had occurred, only that it was consistent with sexual intercourse. So at that point, defense counsel had shown the relevance of his proffered evidence. He did all that he needed to do to present the evidence of the prior sexual act to overcome the rape shield objections. The State has tried to sort of paint it as wildly speculative and hypothetical that such an area of redness could last for three days. But the fact is that in this case, this particular injury was shown by the State's own expert. He wasn't able to determine when it had occurred. And so what's important is under the facts of this case, Ronald showed the relevance and the constitutional necessity of this evidence. Is relevance here the equivalent of constitutional necessity? Well, the relevance, as it's been explained or outlined in the case law, the case law says that a possible or plausible alternative source is relevant evidence to overcome the rape shield objection under the constitutional exception, if that makes sense. Any obligation on the part of the defendant to make an offer of proof or cross-examine the doctor to establish that cervical redness could last for three days? Well, the doctor had already said he couldn't determine when the cervical redness or when the injury occurred. And so it's at that point that defense counsel, reasonably enough, requested a sidebar, asked to present this evidence, believing that he had shown the constitutional necessity for it. And then that motion was denied. At that point, it would have been highly inappropriate for defense counsel to go back out and try to tease out of the expert, well, could this cervical injury have lasted for three days? That's something that obviously alludes to prior sexual activity, the kind of thing that's barred under the rape shield statute. Even in an offer of proof? Even, correct. I mean, we had already heard from the officer during his testimony if he could make a determination as to when this occurred. So, or how it occurred, only that it was consistent with sexual intercourse. So the state's own expert, you know, showed the need for, you know, had a sufficient offer of proof for this evidence. Is it equivalent to say, I can't tell when the injury occurred, to saying intercourse three days before could contribute to this? Is that the same? It's certainly a reasonable... I mean, what if it was a week before? What if it was a month before? Right, and it's certainly reasonable, and the fact is that the boyfriend's sperm was still found in the vaginal swab. And that's sort of what defense counsel wanted to show, that there was DNA found in the vaginal swab from the boyfriend. And so it's not, you know, speculative or hypothetical to think that with respect to this injury, it could have occurred during that prior sexual activity. Do you see any kind of expert testimony for that? We had an expert. I mean, the fact is that the state put this expert on to present the cervical injury and then argued that that was proof that Ronald penetrated her. But the case law says that all we need to show is that there's a possible or plausible alternative source. We don't have to sort of directly link it to the prior encounter. And if we were to try to do that, that would sort of invite the same sort of embarrassment and humiliation to the complainant that the rape shield statute tries to avoid. So one other point is that the state cites some medical journals to prove its point with respect to cervical injuries. But even looking at those journal articles, they uniformly state that the genital injuries can be sustained and last for three days or so, even when you have consensual intercourse. So even looking at, you know, just a quick glance at some medical journals, that provides a sufficient offer of proof or basis. Assuming that the confession came in, could the rape shield issue be harmless? No. The state would have to prove that it's harmless beyond a reasonable doubt here. It's a fully preserved constitutional issue. And here the case basically boiled down to a credibility contest between the complainant and then Ronald, who both testified at trial. And this physical injury. That's assuming the confession doesn't come. Well, a confession that Ronald renounced at trial. Right. So is guilt overwhelming with the confession? No. And, in fact, you know, so aside from this being a credibility contest, this was a case where the jury deliberated for nine hours over two days.  So this was clearly a case that troubled the jury. And this cervical injury was the only physical evidence specifically pointing to or specifically distinguishing the two accounts, the complainant and Ronald, pointing to vaginal intercourse as the complainant testified to. So this error would clearly not be harmless in this case. The state also points to the trial court's ruling as having balanced the appropriate factors and made the right conclusion here. The trial court had it exactly backwards. The trial court in ruling on this issue said that the expert did not say that this injury was the result of a rape. It would be different if he found an injury consistent with forced sexual acts within the last few hours. Then we'd be in a different ballpark. So, in other words, the trial court saying that if the expert had shown that this injury was the result of forced sex, then the defense could have brought in this proffered evidence. The court had it exactly backwards. That would have made the evidence completely irrelevant. So to the extent that we're looking to whether the court abused its discretion here, the court completely misinterpreted the rape shield statute and the relevance of this particular evidence. If this court has no other questions, then I would ask that you affirm the decision of the appellate court and remand to the trial court for a new trial preceded by an individualized hearing to determine whether Ronald should be tried as an adult. Thank you. Mr. Horvath? May it please the court. I'd like to pick up where counsel left off with regard to the rape shield statute. To be clear, the people agree that under extraordinary, very compelling circumstances, a defendant may be allowed to introduce evidence of a victim's sexual history to explain the physical evidence of a sexual assault. That's not the point. The point is that the defense proffer, the basis for his request under the facts of this case were speculative. And that's why the trial court promptly denied his request. To follow up on a point that Chief Justice Garmon made regarding the question, and my opponent points to that, well, he asked the expert, well, do you know, the actual question was, do you know when this cervical redness occurred or when it was inflicted? And the answer was no. That is, that is quite a different question of, well, let's take that a step further. Because I'm the proponent here. I'm trying to breach the rape shield statute. I have to show a heightened evidentiary burden. So I'll ask the follow-up questions based on that. Well, how long would you expect it to last? You've done thousands of pelvic exams and hundreds of rape sexual assault exams. In your experience, after consensual or forced sex, how long would you expect it to last? Three minutes? Three hours? Three weeks? That's a totally different question. And if the defense says the proponent who is seeking to overcome this extremely high burden of introducing this evidence, he has that burden. And it's our position that the trial court exercise, properly exercise their discretion. I think it's important to point out that the defense is asking for de novo review on this issue. It's not review de novo. And this Court made that clear in Santos. This is a discretionary ruling. It's not enough that a review in court would come to a different conclusion. The judge had at her disposal very limited information that came from the defense as a basis to pierce the rape shield statute. And with that limited evidence, she made a very good exercise of discretion in balancing his interest in that evidence and the purpose and the spirit behind the rape shield statute. My point points out that while the State used this evidence to make the argument that the cervical redness was caused by the attack, while the State had no more evidence with which to make that argument, then the defense had to make their argument. And the State argued that it was evidence, it was a reasonable inference during closing argument to argue that that was a reasonable inference based on the evidence. Just like it was a reasonable inference from the defense perspective to argue that it's, as they did, that it's meaningless. It means nothing. It could be caused by, and I don't have the quote in front of me, it could be caused by anything. It could be caused by a rash. Even the doctor said that it could be consensual or forced sex. And I think on that score, it is harmless. At most, it's harmless beyond a reasonable doubt because he got to make that very point in his closing argument. With regard to the medical studies that are in our brief, and there are many, and what they state is that while it is possible that consensual sex can cause cervical redness, it is highly rare. It's unlikely. And that when it does occur after consensual sex, it disappears within 72 hours. So even if the defense had tried to substantiate their offer of proof, it's likely that the doctor would have given them an answer that he wasn't happy with, that it's highly unlikely that this would stick around for three days. So for those reasons, the trial court was well within its discretion to deny his request. With regard to the youth officer and what he could have done, what he might have done under varying circumstances, the test for that is reasonableness. Under the circumstances, what the officer did at the time. And I think it's important to point out that this Court in Morgan said that if the failure to make any effort to notify a concerned adult doesn't warrant suppression, then a lack of efforts or other things, additional measures that they could have taken, that certainly doesn't warrant suppression. The defense uses the words conflict, while Mr. Stephen Kehoe was conflicted, he couldn't have had Ronald Patterson's best interest in mind. That argument can always be made. If the concerned adult is the mother of the defendant, she's also the mother of the victim. So then automatically the police notifying a family member is automatically disqualified, even though that entity is expressly contemplated by the Juvenile Court Act. The point is that the police, again, it's a question of reasonableness under the circumstances. It's impossible for the police to implement a rule of law, as this Court said in G.O., that the point is to supply law enforcement with a workable rule. And what the appellate court has issued in its opinion is a very unworkable rule, that the efforts in this case were not enough, because the director of this facility had some connection to him, but he also had a connection to the victim. That is an unworkable rule, and, again, it turns on reasonableness. And with regard to Murdoch, the efforts to distinguish Murdoch and G.O. and Morgan are illusory. Those cases don't just turn on their facts. They stand for rules of law and propositions that are well settled, and the appellate court just didn't follow them in this case. In Murdoch, this Court expressly held that, despite the participation, even the active participation of a youth officer, even if he's, I mean, this Court declared that the youth officer in Murdoch was effectively absent because he was a lead investigator. We don't have anything approaching that in this case.  Unless the participation of the youth officer or the absence of a concerned adult, those facts actually caused the defendant's will to be overborne, and there was absolutely no evidence of that in this case. And I think it's important to point out that the allegations in the trial court were not that the defendant was coerced, that he was mistreated, or that he was induced to make this statement. His testimony in his trial is, I didn't say that. So as we say in our reply that his argument is sort of qualitatively morphed from, I never said this to I was coerced to say this. There was no evidence of mistreatment. On the contrary, there was evidence that the youth officer and the police treated him well. He was in the higher range, to use a language from Murdoch. He was not handcuffed. He was offered food and drink. He understood the interrogation process. He understood his Miranda rights. The trial court found all these in her ruling, and those comport with the findings of the psychiatrist that despite his mental deficiencies, and we're not saying that he's not a troubled youth. He is clearly a troubled young man, but his mental deficiencies did not impede his ability to give a voluntary statement. So for those reasons, we've asked that this court recognize that this appellate decision cannot be reconciled with Murdoch, Morgan, Orgeo, or the Juvenile Court Act. And the decision cannot be reconciled with the purpose and function of the rape shield statute, which is one of the very few statutes that's designed to protect victims of crime. Thank you. Thank you. Case number 115-102, People of the State of Illinois v. Ronald Patterson, is taken under advisement and is agenda number two. Mr. Horvath, Mr. Corpez, thank you for your arguments today. You're excused.